UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| LISA A. HARRIS | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:04-CR-11 |
| | ) | (1:05-CV-147) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF DECISION AND ORDER**

Before the court is Petitioner, Lisa A. Harris's ("Harris's or "Petitioner's"), "Motion to Vacate Conviction and Sentence Pursuant to 28 U.S.C. §2255" filed on April 28, 2005. On May 12, 2005, the court held a conference with counsel and directed Harris's counsel to file a supplement to the §2255 petition to which the Government was directed to respond. The Government responded on June 1, 2005 and Harris replied on July 20, 2005. For the following reasons, Harris's motion is GRANTED and the case shall be set for a resentencing hearing.

**DISCUSSION**

On March 12, 2004, the Government filed a single count information against Harris alleging bank fraud pursuant to 18 U.S.C. §1344. Subsequently, on March 24, 2004, Harris appeared in court and waived her right to a grand jury indictment and pled guilty to the charge. The guilty plea was obtained pursuant to a written plea agreement wherein Harris agreed to plead guilty to the information in exchange for: (1) a recommendation for the low end of the sentencing guideline range; and (2) a recommendation for a sentencing reduction for acceptance of responsibility. Harris also agreed to waive all rights to appeal her sentence and agreed not to contest the sentence in any

1

post-conviction proceeding, including a proceeding under 28 U.S.C. §2255.

On June 21, 2003, the court sentenced Harris to 24 months imprisonment, the low end of the applicable guidelines range. The probation officer calculated Harris's guidelines sentence based upon a total offense level 17 and a criminal history category of 1. The total offense level included two enhancements: one for using a position of trust to commit the offense and one for causing the unauthorized transfer of identification unlawfully to produce or obtain identification. At the sentencing hearing, the court noted that the sentence was harsh but that the court was bound by the then-mandatory nature of the sentencing guidelines. The court also noted that it had received in evidence a substantial number of letters from the community seeking leniency on Harris's behalf.

Three days after Harris was sentenced, the Supreme Court decided *Blakely v. Washington*, 124 S.Ct. 2531 (2004) which set in motion the Seventh's Circuit decision to apply *Blakely* to the federal sentencing guidelines in *United States v. Booker,* 375 F.3d 508 (7th Cir. 2004) ("Booker I") and, eventually, the Supreme Court's pronunciation in *United States v. Booker/Fanfan*, 125 S.Ct. 738 (2005) ("Booker II"), wherein the federal sentencing guidelines were rendered advisory. Although the *Blakely* decision was handed down three days after her sentence and well within the time frame for the filing of a Motion to Correct under Fed.R.Crim.P. 35(a), defense counsel did not file such a motion.

In her present motion, Harris seeks relief pursuant to §2255 because, she argues, her defense counsel was ineffective for failing to file a Rule 35 motion within seven (7) days of her sentence in light of *Blakely*. This contention has some teeth since in at least one case on similar facts (albeit not in the context of a §2255 petition), a district judge granted a defendant's Rule 35 motion and resentenced that defendant in accordance with the *Blakely* decision. *See United States v. Shamblin*,

2

323 F.Supp.2d 757 (S.D.W.Va. 2004).  After a review of the applicable standard, the court shall examine the particulars of Harris's case.

To make out a successful ineffective assistance of counsel claim,  Harris  must demonstrate that: (1) her counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance so prejudiced her case that it deprived her of a substantial right. See *Strickland v. Washington*, 466 U.S. 668, 688-94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Because one must show both deficient performance and prejudice to prevail on an ineffective assistance of counsel claim, a failure to show one or the other will defeat the claim.

"With regard to the performance prong, [the] defendant must direct the court to the specific acts or omissions which form the basis of his claim. The court must then determine whether, in light of all the circumstances, the alleged acts or omissions were outside the wide range of professionally competent assistance." *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000).  Should Harris satisfy the performance prong, she must then fulfill the prejudice prong by demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *United States v. Starnes*, 14 F.3d 1207, 1209-10 (7th Cir.1994).

Before turning to the specifics of the *Strickland* analysis, the court must first examine the Government's contention that Harris is simply out of luck on the claim made in her §2255 petition because she waived her right to challenge her sentence in any post-conviction proceeding.  The Government further argues that even if the court construed Harris's petition to be a challenge to the performance of counsel at sentencing rather than to the sentence itself, a valid waiver in a plea agreement waives the argument that counsel was ineffective at sentencing. *See Bridgeman v. United States,* 229 F.3d 589, 591-592 (7th Cir. 2000); *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir.

2000).

This is all true, but it misconstrues the nature of Harris's argument. Harris has not contended that counsel was ineffective at the sentencing hearing. In fact, Harris has not challenged any conduct of counsel at the sentencing hearing at all. Her contention, and one that neither *Bridgeman* or the appellate waiver foreclose, is that counsel was ineffective *three days later* when he failed to file a Rule 35 motion, after a potential change in the controlling law that resulted in her sentence. Such a motion would not have been foreclosed by the waiver in her plea agreement which governed only the filing of an appeal and post-conviction motions relating to the sentence. While certainly a finding that counsel was ineffective by failing to file a Rule 35(a) motion could collaterally affect the sentence imposed, so too could a claim of ineffective assistance of counsel with respect to the underlying conviction, and Harris didn't waive this claim either. *See Bridgeman,* 229 F.3d at 592 (holding that collateral attack on the voluntariness of a guilty plea which is a challenge to the conviction, not the sentence is not foreclosed by the language of the appeal waiver); *see also Blacharski v. United States*, 215 F.3d 792, 793-94 (7th Cir.2000) (where appellant only waived right to challenge sentence, he was free to appeal validity of plea agreement). Accordingly, the court does not find the appellate waiver precludes review of Harris's ineffective assistance of counsel claim.

Turning now to the merits of the ineffective assistance of counsel claim, Harris has little trouble overcoming the prejudice prong based on the facts here. The court specifically indicated at sentencing that it thought the sentence was steep. Indeed, the undersigned specifically indicated that the court's discretion to impose a lesser sentence was limited:

> THE COURT: I received a substantial number of letters on Ms. Harris's behalf and I have read them all. And I see a number of people in the courtroom here. I presume that may include some of the letter writers.

> [Defense Counsel]: That's correct.
> THE COURT: And I assume that [defense counsel] has explained to you, Ms. Harris, how the federal sentencing guidelines work.
> THE DEFENDANT: Yes.
> THE COURT: And that my discretion in these cases is very limited. There are certain specific issues that can be raised on your behalf that might entitle you to a downward departure, but that I'm sure [defense counsel] has examined this carefully...I gather from the fact that none of them are raised that there are none.
>
> And let me say that as a matter of policy I do not approve of this form of sentencing. I've said that enough times in this court tha tthat's pretty clear by now. That's up to Congress to decide. I'm not entirely sure that the sentence as proposed here and the guideline range proposed here is at all appropriate in this kind of offense, but Congress has taken that issue away from me. In fact, they've recently enacted legislation to make it crystal clear that they don't want me fooling around with the guidelines where I shouldn't be...

A clear inference from the above exchange was that if the court had discretion to depart from the guideline range, it would likely have done so in this case. Given the fact that only three days later, the Supreme Court substantially altered the landscape of federal sentencing, Harris has clearly demonstrated prejudice from her counsel's failure.

This leaves the crucial question of whether counsel's performance fell below an objective standard of reasonableness. On this point, the court concludes that counsel's performance did fall below what is objectively reasonable with respect to the facts of this particular case. The court has found no cases, and defense counsel has not cited any, where a court has held that the failure to file a Rule 35 motion constitutes ineffective assistance of counsel. *See Shraiar v. United States,* 736 F.2d 817, 818 (1st Cir.1984) ("No court has held that failure to file ... a motion [pursuant to former Rule 35(b)] *automatically* constitutes ineffective assistance of counsel."). The facts of this case, however, lend themselves to the conclusion that counsel's failure in this instance to file a Rule 35(a)

motion constitutes ineffective assistance of counsel on its face.

From the day of its release, the *Blakely* decision, raised serious constitutional questions concerning the validity of the then-existing federal sentencing guidelines. Indeed, media pundits, legal scholars and attorneys nationwide were immediately opining on the effect of the *Blakely* decision on the federal sentencing scheme. See Linda Greenhouse, *Justices, in Bitter 5-4 Split, Raise Doubts on Sentencing Guidelines*, NY Times**,** June 25, 2004 at A1; Justices reiterate importance of juries in sentencing phase," USA Today, June 25, 2004. Marc Fernich, *Blakely v. Washington: A Selective User's Guide, Mouthpiece*, at 6-7 "[w]hile the Blakely decision "did not explicitly invalidate the [Federal] Guidelines, that is its unmistakable implication."); see also, 94 J. Crim. L. & Criminology 1069, 1103.

The court takes judicial notice of the fact that within a few days after *Blakely's* release, the undersigned received numerous requests from counsel to continue sentencing hearings in light of the *Blakely* decision as well as objections to sentencing calculations made in Presentence Investigation Reports. This was typical of courts across the country who almost instantaneously began suspending consideration of various criminal matters pending word from higher courts as to whether the *Blakely* decision would be interpreted to invalidate the federal sentencing scheme. And, as a practical matter, the lower courts didn't wait long for the decisions to come forward as several courts were poised to decide the question within days. See *United States v. Croxford,* 324 F.Supp.2d 1230 (D.Utah 2004) (decided June 29, 2004 and holding Sixth Amendment right to jury trial precluded imposition of federal Sentencing Guideline enhancements for obstruction of justice and for relevant conduct of victimizing a second minor; *Booker I,* (decided July 9, 2004 and applying Blakely to federal sentencing guidelines); *United States v. Pineiro,* 377 F.3d 464 (5th Cir.2004)

(decided July 12, 2004 and holding that *Blakely* does not apply to the United States Sentencing Guidelines). Thus, there can be no question that *Blakely* generated a great deal of publicity and became a crucial case in federal sentencing within just a few days of its release.

It is exactly this fact which, in turn, made it objectively reasonable for counsel in this case to file a Rule 35(a) motion seeking review of Harris's sentence, if, for no other reason than to protect himself from a later assertion of ineffective assistance. In fact, all of the circumstances of Harris's case, her two enhancements, and especially the undersigned's statements at sentencing a mere three days before *Blakely* pointed precisely to the reasonableness of filing such a motion.[1] As a result, the court concludes that it counsel's performance fell below an objective standard of reasonableness when he failed to move under Rule 35 for a reduction of sentence.

This court's conclusion is bolstered by the fact that in a case on virtually identical facts as this one, a district judge considered a Rule 35 motion filed immediately after the holding in Blakely. *Shamblin*, 323 F.Supp.2d at 759. In *Shamblin,* the district court was faced with a Rule 35 motion asserting that the sentence imposed by the court three days before the holding in *Blakely* was clear error requiring resentencing. There, the judge found so many enhancements by a preponderance of

---

[1] The court is aware that the Seventh Circuit has explicitly held that *Blakely* and *Booker II* are no more special than myriads of other cases that have had substantial legal import:

> Bownes argues that *Booker* is special because it brought about a 'sea change' in the law. The identical argument was rejected, rightly in our view, in the *Bradley* and *Killgo* cases ... It is true that *Booker* has had a tremendous impact because it has affected many thousands of sentences, but it is no more, and indeed less, of a 'sea change' than numerous other legal innovations scattered across the volumes of the *United States Reports* and the *Federal Reporter*...

*Bownes*, 405 F.3d at 637. However, whether *Blakely* is special so as to warrant particular attention from counsel is not the only fact relevant here. As indicated, the comments by the undersigned indicating that he disagreed with the guideline policies and that the sentence was harsh in combination with the import of *Blakely* on the sentencing guidelines, make this case particularly compelling.

7

the evidence that the defendant's guideline range was literally off the charts and thus, he was sentenced to the maximum allowed by law. Upon review of the timely filed Rule 35 motion, the court held that "the failure to recognize defendant's Sixth Amendment rights and apply these rights to the sentencing calculation constitutes clear error." Ultimately, the judge reduced the sentence from 240 months to 12 months. The court also specifically concluded that the court had jurisdiction under Rule 35 to correct a sentence after controlling precedent overrules the basis for the original sentence.

In holding that counsel was ineffective in this instance, it is important to limit this holding to the facts of this particular case. The court is not concluding that in every case where counsel fails to file a Rule 35 motion they are, *per se*, ineffective. Likewise, the court is not holding that every change in the controlling precedent would result in a successful ineffective assistance of counsel claim where defense counsel failed to file a Rule 35 motion. The facts and circumstances of this particular case, the intervening landmark Supreme Court decision, and the publicity surrounding it all point to this result. However, the court cautions that this decision is not a license for defendants to assert that this holding should be applied in every case. Indeed, it is a rare case that would succeed under the legal rationale advanced here.

With those cautionary words, it is critical to note that had defense counsel filed a timely Rule 35 motion, this court would have vacated the original sentence and continued the sentencing hearing, as it did in all the then-pending cases, until after the court received the benefit of higher court decisions and, ultimately, the outcome in *Booker II*. The court would have then scheduled a prompt sentencing hearing wherein the court would have been guided by the advisory guidelines range and the newly afforded discretion that *Booker II* provides. Because of counsel's failure to file such a

motion, Harris never received the process that *Booker II* identifies as Constitutionally required. Accordingly, the court concludes that defense counsel provided ineffective assistance to Harris by failing to promptly file a Rule 35 motion. Harris's request for relief pursuant to 28 U.S.C. §2255 is hereby GRANTED.

## **CONCLUSION**

Petitioner's motion to vacate, correct, or set aside sentence pursuant to 28 U.S.C. §2255 is GRANTED. The court shall notify counsel by way of a separate minute entry of the date and time for a resentencing hearing.

Entered: This 9th day of August 2005.

s/ William C. Lee<br>
United States District Court<br>
Northern District of Indiana